## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:22-CR-00179 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| CHEVON GRANT | ) | |
| | ) | |
| | ) | APRIL 25, 2024 |

## MEMORANDUM OF DECISION RE: MOTION TO DISMISS THE INDICTMENT
### (ECF NO. 32)

Kari A. Dooley, United States District Judge:

Defendant Chevon Grant ("Grant" or the "Defendant") was charged by indictment on August 23, 2022 with one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Indictment alleges that on or about May 7, 2022, Grant, having been previously convicted of two felonies, knowingly and intentionally possessed a firearm. ECF No. 1. Pending before the Court is Grant's motion to dismiss the Indictment based on the holdings in *Franks v. Delaware*, 438 U.S. 154 (1978), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022). Alternatively, Grant seeks suppression of evidence, to include the firearm at issue, obtained in violation of *Franks*. For the reasons set forth below, the motion is DENIED.

**Legal Standard**

"The dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. Raniere*, 384 F. Supp. 3d 282, 299 (E.D.N.Y. 2019) (quoting *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)). The Federal Rules of Criminal Procedure permit a defendant to file a pretrial motion to dismiss based upon a defect in an indictment or in the initiation of the prosecution, provided "the basis for

the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Calhelha*, 456 F. Supp. 2d 350, 356–57 (D. Conn. 2006) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)). "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Levine*, 249 F. Supp. 3d 732, 738 (S.D.N.Y. 2017) (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)). "When deciding a motion to dismiss an indictment pursuant to Fed. R. Crim. Pro. 12(b), a court must accept all factual allegations in the indictment as true." *United States v. Kogan*, 283 F. Supp. 3d 127, 134 (S.D.N.Y. 2017) (quotation marks and citation omitted).

**Factual Background[1]**

On April 18, 2022, several dozen people gathered at a memorial event for an individual who had unexpectedly passed away a few weeks earlier. Gov't. Opp. to Mot. to Dismiss ("Gov't. Opp.") at 1, ECF No. 33. The venue, known as the Party House, was a private rental space located on Main Street in Hartford, Connecticut. The Government has provided to the Court surveillance footage from the venue that depicts the relevant events, and identifies Grant in the footage as the individual wearing a shirt that reads "RIP BRA BRA" on the back. Gov't. Opp. at 2. As people inside the venue were socializing and dancing, an unidentified individual began firing a gun in the

---

[1] While the Court takes the Indictment as a whole and assumes its factual allegations to be true for purposes of deciding a motion to dismiss under Fed. R. Crim. P. 12(b)(1), *United States v. Litvak*, No. 3:13-CR-19 (JCH), 2013 WL 5740891, at *2 (D. Conn. 2013), the parties have provided additional background information as to events leading up to the Defendant's indictment. These facts are largely undisputed and to the extent any disputes exist, they need not be resolved on this motion.

parking lot outside the venue. Gov't. Opp. at 2. While most attendees immediately ducked for cover, some individuals returned fire. Mot. to Dismiss at 2, ECF No. 32. In an affidavit subsequently submitted seeking an arrest warrant for Grant, the affiant identified one of these individuals as Grant. In the video footage, Grant can be seen retrieving a firearm from underneath a nearby table, tucking it into his waistband, and then rushing back outside. Gov't. Ex. ("GX 1") at 18:28:30. In the vestibule just outside the inner area of the venue, Grant can be additionally seen brandishing a weapon, stepping outside, and appearing to begin taking aim while also taking cover. Gov't. Ex. ("GX 2") at 18:28:54-18:29:10. He then returns to the vestibule, dons a facemask, and returns outside. *Id.* at 18:29:14-18:29:34. He does not appear again in the surveillance footage and the video footage does not include Grant actually firing his weapon. The Government does not argue otherwise.

On May 7, 2022, Grant was arrested by the Hartford Police Department on the warrant sought and obtained at least in part on the affidavit which had averred that Grant fired his weapon in the parking lot of the Party House. Gov't. Opp. at 3. On the same date and at the same time, Grant was arrested on two additional outstanding arrest warrants. *Id.* Responding to information from a confidential informant, officers located Grant in the driver's seat of a parked vehicle, at which time the police effectuated the arrest on all three outstanding warrants. At the time of his arrest, a loaded firearm was observed jutting out from underneath the driver's seat where Grant had been located. *Id.* The firearm was seized and thereafter, Grant was indicted on August 23, 2022, and charged with unlawful possession of the firearm seized on May 7, 2022. Grant seeks dismissal of the Indictment on the ground that the Affidavit submitted in support of the arrest warrant stemming from the Party House shooting included false and misleading statements, specifically, that the video footage revealed Grant to have returned fire in the parking lot. He relies

upon *Franks v. Delaware,* 438 U.S. 154 (1978). Alternatively, relying upon *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022), Grant argues that 18 U.S.C. § 922(g) is unconstitutional.

**Discussion**

*Franks* established that if a search warrant was the product of false or misleading information, under certain circumstances, a defendant may seek suppression of the evidence seized under the warrant and may be entitled to an evidentiary hearing on his claims. "If a defendant makes a substantial preliminary showing that an affidavit included a false statement knowingly and intentionally, or with reckless disregard for the truth, and that the allegedly false statement is necessary to the finding of probable cause, then the Fourth Amendment requires that a hearing be held at the defendant's request." *United States v. Best*, 2022 WL 136461, at *1 (D. Conn., 2022) (citing *Franks*, 438 U.S. at 154–56) (internal quotations omitted). Grant seeks not only suppression of the firearm in this case but dismissal of the indictment insofar as the Indictment is constitutionally tainted by the false affidavit submitted in support of the arrest warrant stemming from the Party House shooting.

Grant's arguments under *Franks* are misplaced. Grant is not charged in this matter with possession of a firearm on April 18, 2022, the date of the Party House shooting. Nor was the affidavit at issue relied upon in bringing the instant charges. Indeed, the affidavit in support of the arrest warrant, on state charges, arising from the events of April 18, 2022, has no bearing on the validity of the present Indictment, which derives from his possession of a firearm on May 7, 2022.

Notwithstanding, Grant argues that insofar as the arrest warrant arising from the Party House events was invalid under *Franks,* reliance upon that warrant on May 7, 2022, when he was allegedly found in possession of a firearm, renders the seizure of the firearm and the subsequent

Indictment based thereupon tainted by the Party House arrest warrant. The Court need not decide whether *Franks* would be extended to such a situation, or the appropriate remedy even if so extended.[2] Grant had two additional outstanding arrest warrants, both of which were executed on May 7, 2022. The validity of these warrants is not challenged. Accordingly, even without the purportedly tainted warrant, Grant would have been lawfully arrested and the gun which forms the basis of the Indictment would have been located in plain view and seized.[3] *See United States v. Heath,* 455 F.3d 52, 60 (2d Cir. 2006) (under the inevitable discovery exception to the exclusionary rule, where each of the contingencies necessary to the legal discovery of the contested evidence is present, the motion to suppress is resolved in the government's favor); *United States v. Cancel,* 167 F. Supp. 3d 584, 597 (S.D.N.Y. 2016) (even though search incident to arrest of defendant's backpack was unauthorized, suppression was not warranted where evidence would have been inevitably discovered during inventory search following arrest); *see also Herring v. United States,* 555 U.S. 135, 145 (2009) (suppression of items seized incident to arrest not warranted where arrest warrant, unbeknownst to arresting officers, had been recalled and did not authorize arrest).[4]

---

[2] *See United States v. Powell*, 634 F. Supp. 3d 48, 53 (E.D.N.Y. 2022) ("It remains an open question in this circuit whether the *Franks* doctrine applies to arrest warrants at all"); *United States v. Awadallah*, 349 F.3d 42, 64 n.17 (2d Cir. 2003) (noting that "[t]he *Franks* doctrine arose in the context of a search warrant, and neither the Supreme Court nor this Court has extended it to arrest warrants" and assuming, without deciding, that *Franks* applied to warrant affidavit for the arrest of a material witness); *see also United States v. Broward*, 594 F.2d 345, 350 (2d Cir. 1979) (declining to decide whether district court correctly applied *Franks* to arrest warrant); *Dupree v. United States*, No. 10-CR-0627, 2020 WL 3960512, at \*10 (E.D.N.Y. July 13, 2020) (noting that "[i]t is not clear whether *Franks* is applicable to false statements in an arrest warrant affidavit," but assuming it applied).

[3] Grant argues that the impetus for locating him was the Party House warrant. While this may well be the case, the officers' motivation to execute the Party House warrant does not render invalid the two other warrants executed at the same time.

[4] Although not necessary, the Court concludes that the arrest warrant for the Party House shooting was amply supported by probable cause even without the concededly inaccurate statement regarding Grant firing his weapon. The video established that Grant possessed a firearm and brandished the firearm at a crowded event where many people and even children were present. The arrest warrant that was issued charged Grant not just with unlawful discharge of a firearm, but also with criminal possession of a firearm and reckless endangerment, neither of which required proof that Grant discharged the firearm at issue. *See United States v. Osborne*, 739 F. App'x 11, 16–17 (2d Cir. 2018) (summary order) (affirming denial of *Franks* hearing concerning wiretap and search warrant applications where affidavit included "numerous other statements, text messages, and evidence establishing probable cause" and erroneous information within affidavit "was neither material nor necessary to an ultimate finding of probable cause"); *United States v. Aguiar*, 737 F.3d 251, 263 (2d Cir. 2013) (same; pen register and trap and trace warrant).

Grant next argues that his possession and/or use of firearms is constitutionally protected by the Second Amendment, and any attempt to criminalize his possession and/or use violates the Supreme Court's holding in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022). Grant brings both as applied and facial challenges to 18 U.S.C. § 922(g)(1). Grant argues that under *Bruen*, the Government must demonstrate that the statute "is consonant with the limits the Founding generation understood to be permissible when they ratified the Second Amendment." Mot. to Dismiss at 5. The Government argues in response that the Supreme Court's Second Amendment jurisprudence does not require it to prove historical tradition in the context of challenges to § 922(g).

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Amendment enshrines an individual right to bear arms and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. Subsequently, the Court extended *Heller's* holding to the states in *McDonald v. City of Chicago*, 561 U.S. 742 (2010). In both cases, the Court emphasized that its Second Amendment jurisprudence "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons…" *Id.* at 786 (quoting *Heller*, 554 U.S. at 626) (internal quotations omitted). A decade later, in *Bruen,* the Supreme Court clarified the test required for assessing Second Amendment challenges. Noting that lower courts had improperly "coalesced around" a "two-step" analysis for disposing of Second Amendment challenges that combined "history with means-end scrutiny," the Court held that the correct test must be "rooted in the Second Amendment's text, as informed by history" and that the government "must affirmatively

prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19.

After *Heller* and *McDonald*, but before *Bruen*, the Second Circuit Court of Appeals considered whether § 922(g)(1) violated the Second Amendment rights of a convicted felon who had been convicted under the statute for possessing a firearm and body armor. *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013). The *Bogle* Court held that while *Heller* and *McDonald* had developed more expansive interpretations of the Second Amendment, both opinions specified that they should not be interpreted to disturb existing prohibitions on the use of firearms by felons, and accordingly § 922(g) is a constitutional restriction on the Second Amendment rights of convicted felons. *Id.*

The Government argues that nothing in *Bruen* undermined *Bogle's* core holding rendering that decision binding upon this Court. Grant argues that *Bogle* has been sufficiently thrown into question by *Bruen* as well as post-*Bruen* decisions by the Third and Fifth Circuit Courts of Appeals. The Court agrees with the Government. *Bogle* did not incorporate the means-end test that was rejected by the *Bruen* Court. Indeed, *Bogle* expressly and exclusively relies on language from *Heller* and *McDonald* in upholding § 922(g), stating that "the Supreme Court clearly emphasized that recent developments in Second Amendment jurisprudence should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* (citing *Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786). Moreover, nothing in *Bruen's* majority opinion suggests that it intended to abrogate or cabin those cases in any fashion. In fact, *Bruen* emphasizes that it is endorsing and reasserting the reasoning in *Heller* and *McDonald*. *See e.g., Bruen*, 597 U.S. at 8-9 ("In … *Heller* … and *McDonald*, we recognized that the Second and Fourteenth Amendments protect the right of an **ordinary, law-abiding citizen** to possess a handgun in the home for self-

defense"); 10 ("We too agree, and now hold, **consistent with *Heller* and *McDonald***, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home") (emphases added). *Bruen* did not disturb the precedents upon which *Bogle* relies and *Bogle* therefore remains binding upon this Court. The Court now joins the chorus of other district courts in this Circuit which have so held.[5] *See United States v. Gaskin*, No. 3:22-CR-98 (SRU), 2024 WL 381009, at *4 (D. Conn. Feb. 1, 2024) ("This Court remains bound under *Bogle* to hold that Section 922(g)(1) is constitutional"); *United States v. Hairston*, No. 3:23-CR-00020-SVN, 2024 WL 326667, at *4 (D. Conn. Jan. 29, 2024) (finding § 922(g) constitutional because "*Bogle* remains good law after *Bruen*"); *United States v. Jakups*, No. 3:21-CR-00216 (VAB), 2024 WL 361428, at *3 (D. Conn. Jan. 31, 2024) (same) (collecting cases).[6]

Grant also raises an as-applied challenge to the statute, arguing that "the record contained no evidence that any alleged possession or use by Defendant Grant was other than self protective." Mot. to Dismiss at 5. He relies principally on the video footage which demonstrates that Grant's possession was in response to someone firing into the crowd at the Party House. However, as discussed above, the Indictment does not charge Grant with possessing a firearm on April 18, 2022, the day of the Party House shooting. The Indictment only charges Grant with illegal possession of a firearm on May 7, 2022, when law enforcement observed a firearm jutting out from his driver's seat in plain view as they were arresting him on three active warrants. Gov't. Opp. at 3. As there is no basis upon which to conclude, and Grant does not argue, that his

---

[5] Because the Court is bound under *Bogle* to find § 922(g) constitutional on its face, the Court does not undertake the historical analysis required under *Bruen* for assessing Second Amendment challenges to firearm regulations.
[6] Grant points the Court to cases in the Third and Fifth Circuits that have "called into question" the constitutionality of § 922(g) under *Bruen*. Def.'s Resp. to Gov't. Opp. at 5, ECF No. 38. As *Bogle* remains binding Second Circuit precedent, the Court does not address these cases.

possession of a firearm on May 7 was undertaken in self-defense, the as-applied challenge fails as well.[7]

**Conclusion**

For the reasons stated above, the Court rejects Grant's request for a *Franks* hearing, as well as his facial and as-applied constitutional challenges to § 922(g). Accordingly, the motion to dismiss the Indictment is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of April 2024.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[7] The "as applied" challenge to the constitutionality of the statute is denied without prejudice. Grant may yet develop the factual record as to the circumstances of his prior convictions, possession of the firearm, or other matters which would suggest re-assessment of this issue. The Court also observes that the contours of Second Amendment protections are being actively litigated throughout the country and additional guidance from the Supreme Court or the Second Circuit may shed new and clarifying light on these issues.